### Ernest Melugin v. The State.

No. 7017.     Deceased June 23, 1922.

**Intoxicating Liquors—Manufacture—Requested Charge—Theory of Defense—Hired Hand.**

Where the defendant requested a charge presenting the proposition founded upon the facts in evidence, that even though the witness purchased the materials and was aided by appellant in putting them in a barrel with water, still if the latter then left the premises and abandoned said enterprise, before any intoxicating liquor had been made, and had nothing to do

with it, he being but a hired hand, and did not return, he would not be guilty, the same should have been given and the refusal thereof was reversible error.

Appeal from the District Court of Hall.  Tried below before the Honorable J. A. Nabers.

Appeal from a conviction of unlawfully manufacturing intoxicating liquors; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*T. T. Clark*, for appellant.—Cited: Hardaway v. State, 236 S. W. Rep., 468.

*R. G. Storey*, Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Hall County of manufacturing intoxicating liquor, and his punishment fixed at one year in the penitentiary.

A man named Linley lived in Hall County. The alleged manufacture took place at Linley's home. He does not testify herein. His wife does. She says she first saw appellant on July 1, 1921. He was in a car with her husband, and in said car were sugar, bran and chops. They got to her home about one o'clock that day. The articles named were put in a barrel with water. It was stirred. Mrs. Linley says "they" did these things. Appellant left in a short time. Linley got a man named Burk to come and work for him. This man was also a State witness. Burk swore when he got to Linley's place appellant had gone, and that this was in July but he did not remember the exact date. Witness saw a barrel of what he supposed to be mash in the barn. He dipped off some of the contents and put it in jars and a jug. The remainder he poured in the hog trough. Mrs. Linley also testified that Burk dipped off the contents of the barrel and put it in jars, and that appellant had gone when this was done; that it was brought to town. She testified that she thought it was brought to town on July 3rd. She further says that her husband drank some of the liquid that was dipped from the barrel, and that she had seen him drunk, and that after he drank said liquid he became intoxicated. Burk says Linley drank some of the liquid and that he was not drunk, when he drank that stuff but became drunk afterward. Burk does not venture the opinion that said liquid made Linley drunk, nor that it was intoxicating. Both Burk and Mrs. Linley say the stuff given to the hogs made them stagger as though they were drunk.

Appellant said he hired to Linley at $40 per month and went to the latter's home to work at farming. That Linley told him he was going to make whisky and wanted appellant to help him. He further said he told Linley he did not like the idea, and after being at said place

two days he told Linley that he did not want the job and that he came back to Memphis, and had not been back to Linley's place since. He testified he helped put the sugar, bran and chops, etc., in a barrel on the day he got there, and that he worked on Linley's car the next day, and left said premises at nine o'clock the next morning, and that Linley carried him to Memphis in his car. He further swore that no intoxicating liquors were made while he was at said place, and that he did not go there for the purpose of engaging in any such enterprise but to do farm work.

In this condition of the record appellant asked two special charges, one presenting the proposition that even though Linley purchased the materials and was aided by appellant in putting them in a barrel with water, still if appellant then left the premises and abandoned said enterprise before any intoxicating liquor had been made, and had nothing to do with it and did not return, he would not be guilty herein. The other charge was substantially that if appellant was a hired hand and had nothing to do with the purchase of any material and assisted only as a hired hand, and abandoned the work before there was any spirituous, vinous or malt.liquors made, that he would not be guilty. The main charge contained no presentation of any affirmative defensive theory. That he did all of the matters testified against him and admitted by him to have been done, as a hired hand, and that he abandoned the enterprise before any liquor was made, was the only theory on which was set up any defense by appellant. That one aided another as a hired hand in the illegal manufacture of liquor, would not justify or excuse such person charged with such offense, but it does not seem to us that if there be a serious question raised as to whether or not the connection of the accused was only with preparatory steps to the actual commission of the offense, he should not thereby be held incapable of withdrawal from such criminal enterprise. If in fact no intoxicating liquor had been made when appellant left, and if his leaving was for the purpose in good faith of terminating his connection with the enterprise, and not because his part in same had been completed, we doubt if he should be held to imprisonment in the penitentiary therefor as a principal in the commission of the offense. Whether he did so act and withdraw in good faith was a question of fact for the jury, under a submission of the issue by the court. It seems from the testimony that the extent of appellant's connection with the transaction was the putting of the ingredients into a barrel, or at most stirring same afterward. He is not shown to have purchased or contributed to the purchase of the material. He did not own the premises or the barrel used. The testimony shows that part of the process of manufacture of intoxicating liquor involves the cooking of the mash. The process had not advanced to this stage when appellant left. This seems beyond dispute. The evidence indicates that his leaving did entirely sever his connection with the transaction.

According to Mrs. Linley he was only on the premises from about one o'clock of the first of July until about nine o'clck on the third. She testified that Mr. Burk dipped off the contents of the barrel and it was carried to town on the 3rd of July. She said that appellant had gone before Burk came. It occurs to us that two days is a very short time in which the ingredients ordinarily used in the process of manufacturing intoxicating liquor, may ferment and the liquor be held in any sense to have been made.

Appellant had evidently lived a very sorry life, and many witnesses testified to his bad reputation. This was a material issue in the case as bearing upon his application for a suspended sentence, and may have been considered by the jury as bearing upon the main issue of his guilt. We are not able to conclude but that had a charge been given presenting appellant's only defense in an appropriate way, the result might have been different. We think the special charges re- ferred to sufficient to call the attention of the trial court to the necessity for presenting the defensive theory in an affirmative charge, and that the failure and refusal of the court to so charge was error. The case comes before us in the concluding hours of this term of the court. There is no recognizance in the record. It appears that appellant is in jail. There may be other matters in the record a discussion of which would be pertinent if the court had more time.

Believing that a reversal is made necessary by the failure to give the special charges, it so ordered.

*Reversed and remanded.*